

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-9-2000

# James v. Zurich-American

Precedential or Non-Precedential:

Docket 98-7542

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation
"James v. Zurich-American" (2000). *2000 Decisions*. Paper 25.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/25

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 9, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 98-7542 and 98-7543

LESVILLE JAMES, as assignee of the rights of MERIDIAN
ENGINEERING, INC. and COMPANION, INC., d/b/a
COMPANION ASSURANCE COMPANY,

      Appellant in No. 98-7543

v.

ZURICH-AMERICAN INSURANCE COMPANY OF ILLINOIS,

      Appellant in No. 98-7542

APPEAL FROM THE DISTRICT COURT
OF THE VIRGIN ISLANDS,
DIVISION OF ST. CROIX: CHRISTIANSTED
(D.C. Civil Action No. 95-cv-00117)(RLF)
District Judge: Honorable Raymond L. Finch

Argued September 10, 1999

BEFORE: ROTH and WEIS, Circuit Judges,
and SHADUR,* District Judge

Opinion Filed February 9, 2000

_____

* Honorable Milton I. Shadur, Senior United States District Judge for the
Northern District of Illinois, sitting by designation.

      Joel H. Holt, Esquire (ARGUED)
      Law Offices of Joel H. Holt
      2132 Company Street, Suite 2
      Christiansted, St. Croix
      U.S. Virgin Islands, 00820

      Attorney for Appellant
      Lesville James as assignee of the
      rights of Meridian Engineering, Inc.
      and Companion, Inc. d/b/a
      Companion Assurance Company.

      Ignatius J. Melito, Esquire
       (ARGUED)
      S. Dwight Stephens, Esquire

Wendy S. Kennedy, Esquire
Melito & Adolfsen P.C.
233 Broadway
New York, New York 10279

Douglas L. Capdeville, Esquire
Law Offices of Douglas L. Capdeville
P.O. Box 4191
2107 Company Street, Lot #4
Christiansted, St. Croix
U.S. Virgin Islands, 00822

Attorneys for Appellant
Zurich-American Insurance Company
of Illinois.

OPINION OF THE COURT

SHADUR, Senior District Judge:

We are asked to interpret what may at worst be labeled an ambiguous provision of an insurance policy, to determine whether the policy provided coverage for a third party, not the insured itself. Upon review we find that whatever might be said as to the literal meaning of the disputed provision, the practical construction given to its terms by the actual parties to the policy--the insurer and the insured--resolved any arguable ambiguity and excluded

coverage for the third party. We therefore reverse the order of the District Court to the contrary.

Background

Zurich-American Insurance Company of Illinois ("Zurich") appeals an adverse decision in an insurance coverage declaratory judgment action instituted against it by Lesville James ("James") as assignee of the rights of Meridian Engineering Inc. ("Meridian") and Companion Assurance Company ("Companion"). This action arose out of a dispute between Zurich and Companion as to their respective responsibilities for damages suffered by James, as determined in a personal injury action that he hadfiled against Meridian. Although it is uncontested that Meridian had procured its own liability insurance policy from Companion, what is at issue in the present litigation is whether Zurich was a coinsurer.

Companion had earlier claimed (and now James claims) that Meridian was insured under a policy issued by Zurich to Hess Oil Virgin Islands Corp. ("Hess Oil" or "HOVIC")1

covering a construction project ("FCCU Project") at the Hess Oil refinery in St. Croix, Virgin Islands. That Zurich policy became effective on December 1, 1990 and continued for the duration of the project.[2] As part of the FCCU Project, Hess Oil contracted with Meridian to pave some roads. While working under Meridian's supervision on August 31, 1993, James suffered an injury that he asserted resulted in a below-the-knee amputation of his right leg. On June 24,

---

1. Amerada Hess Corporation ("Amerada Hess") is Hess Oil's parent company. Because Hess Oil did not have its own insurance department, Amerada Hess was involved in procuring the Zurich policy on Hess Oil's behalf. To that end Amerada Hess utilized the assistance of the Marsh & McClennan ("Marsh") brokerage firm.

2. Although the policy states that the estimated time for the project's completion was 44 months, Zurich Br. 43 states that "the parties to the contract have been consistently administering the claims under the Zurich policy for nine years. . . ."

3

1994 James filed his personal injury action against Meridian.[3]

Upon learning of James' lawsuit, "Meridian looked for insurance policies that might cover its liability for James' claim. Meridian identified Companion and Zurich as potential co-insurers. . . ." (James v. Zurich-American Ins. Co. of Ill., No. 95-117F, slip op. at 4 (D.V.I. Sept. 9, 1998)).[4] Defense of the case was tendered to Zurich as well as Companion, but Zurich denied coverage on the predicate that Meridian was not insured under its policy. Companion proceeded to defend the action, but it also tendered defense of the claim to Zurich after initial discovery. Zurich again denied coverage, and Companion then brought this declaratory judgment action.

James, Companion and Meridian later began settlement discussions. Zurich was afforded the opportunity to participate in those talks, but it declined. Those discussions led to an agreement under which Meridian stipulated to a $1 million judgment and assigned whatever rights it had against Zurich and Companion to James in exchange for James' promise not to execute the judgment against Meridian. For its part, Companion agreed to pay James $125,000 as a discharge payment for its share of the stipulated judgment, and it too assigned its rights against Zurich to James. Because Companion's policy limit was $1 million and Zurich's was $2 million, James stipulated that Zurich's maximum liability would be two-thirds of the $1 million stipulated judgment.[5] James was then substituted

as the sole plaintiff in the federal action. Hence the nature
_____

3. Hess Oil and United Dominion Constructors, Inc. ("United Dominion")
were originally named as codefendants, but they were later voluntarily
dismissed from the case.

4. Both James and Zurich seem to dispute the District Court's just-
quoted statement, instead identifying Companion as having discovered
that Meridian might be covered under the Zurich policy.

5. Each of the Zurich and Companion policies contains a coinsurance
provision stating that if another policy covers the same claim, the two
policies are to be treated as coinsurance policies, with each insurer
responsible for a pro-rata share of coverage based upon the respective
policy limits.

4

of the relief sought in the declaratory judgment action
before the District Court was a declaration that Zurich was
a coinsurer, so that James could collect $666,666 from it
under the settlement agreement.

On the litigants' cross-motions for summary judgment,
the District Court determined (in its June 23, 1998 slip
opinion, the "Summary Judgment Opinion"6) that the
contract provision identifying the entities covered under the
policy ("the Named Insured provision") was ambiguous, so
that the need for extrinsic evidence precluded a decision as
a matter of law. Here is the Named Insured provision
(emphasis added):

> Hess Oil Virgin Islands Corps. (HOVIC), Amerada Hess
> Corporation and its directly and indirectly owned
> subsidiary companies and/or interests in associated
> and/or affiliated companies and/or organizations and
> any other companies or entities over which Amerada
> Hess Corporation is responsible to insure and/or
> required to insure under contract or otherwise in respect
> of their involvement in the HOVIC FCCU Project, and
> Litwin Engineers and Contractors, Inc. and/or
> Contractors, Subcontractors and Employees and/or
> Consulting Engineers; and suppliers as required.

At the ensuing bench trial Zurich stressed that the"as
required" language at the end of the provision refers back
to the entities that Hess Oil is "responsible to insure" or is
"required to insure under contract." In contrast, James
argued that the provision provided coverage for all
contractors and subcontractors performing work on the
FCCU Project because the "as required" phrase relates only
to "suppliers."

Both sides produced extrinsic evidence to support their respective interpretations of the provision. Zurich and Hess Oil representatives testified[7] that the intent of the Named

_____

6. To distinguish between that opinion and the District Court's opinion rendered later at the trial, the latter slip opinion (which has earlier been
quoted from in the text at n.4) will be referred to as "Trial Op."

7. All of the testimonial evidence for the bench trial was proffered through submissions of the witnesses' depositions and affidavits, not through live testimony.

Insured provision was to provide coverage only for"FCCU contractors," a term referring to contractors and subcontractors that Hess Oil had contractually promised to insure. As Hess Oil's Property and Casualty Claims Administrator John Talarico ("Talarico") explained, an "FCCU contractor is a term of art we use to describe those whom HOVIC had agreed to provide insurance coverage as embodied by the Zurich Wrap Up policy."

Witnesses from Zurich, Hess Oil and Amerada Hess uniformly stated that the Named Insured provision was intended to provide coverage solely for FCCU contractors. As Talarico explained in a letter to Zurich:

> We purchased the Wrap Up liability insurance first, then the contract provisions were drafted to reflect the coverage terms and limits. The intent is to provide [general liability] and auto coverage for all FCCU contractors in all instances.

Among those bolstering that view were Andrew Wade ("Wade"), the Zurich underwriter who negotiated the policy, James Foley and Ed Weinman, the present and former Hess Oil controllers who dealt extensively with Hess Oil's various contractors, and Kevin Beebe, Amerada Hess' Manager of Corporate Insurance.[8]

Zurich and Hess Oil employees also testified that the policy was administered in accordance with the understanding that the provision covered only FCCU contractors. Talarico stated that in administering claims under the policy Zurich and Hess Oil acted consistently with that understanding. Jackie Ward ("Ward"), a former litigation claims specialist with Zurich, assumed responsibility for handling claims under the policy in 1993 --well after the policy had become effective but before

James was injured. Ward said that she was told at that time "[t]hat HOVIC or [Amerada] Hess would designate those contractors they wanted to insure, and that I was

_____

8. For example, Wade testified that the policy covered only FCCU contractors and that "FCCU contractors are those that . . . HOVIC is obligated to insure because . . . HOVIC offered them insurance as part of their contract . . . for the project."

6

then to insure them under the policy with all of the terms of it." She further answered "no" to the question whether "the word `FCCU contractor' is a word of art used in the policy,"9 but she then went on to confirm that "[i]t's a term that John Talarico and I used to simplify our dealings with each other." Finally, it is undisputed that when James filed suit Zurich did undertake the defense of another company --a codefendant in James' action--that was an"FCCU contractor" that Zurich was contractually obligated to insure.

On the other side of the dispute as to original intent, some written extrinsic evidence submitted by James appeared to indicate that the Zurich policy as written provided coverage for all contractors and subcontractors who worked on the FCCU project. First, during negotiations for the policy Amerada Hess sent Zurich's proposal to Marsh and attached Exhibit II(a) as a summarization of the policy's terms. Exhibit II(a) listed substantially the same language that ultimately appeared in the Named Insured provision and went on with this skeletal description of that provision:

> Policy names as requested Amerada Hess, HOVIC,
> Litwin and any other contractor or subcontractor.

Another abbreviated summary of the Zurich policy prepared by Wade stated that coverage extended to "Hess Oil Virgin Islands Corporation (HOVIC) and all Contractors and Sub-Contractors for FCCU Project." Finally, though this added factor is at best a slim reed, the policy premium was calculated on the total cost of the FCCU Project (which thus included the amounts payable on all of the subcontracts, including Meridian's).

Because it found that extrinsic evidence in support of Meridian's contention more credible and relevant to the original contractual intent, the District Court held"that the intent of the parties in negotiating the contract was to provide coverage for all contractors and subcontractors who

_____

9. That question is inherently misleading. When the term "FCCU contractor" as such does not appear in the policy at all, what sensible meaning can be given to the question whether it is a "word of art" there?

worked on the FCCU Project" (Trial Op. 13). Alternatively, despite its earlier summary judgment ruling, the court reached the same conclusion as a matter of law because it determined that the ambiguous Named Insured provision should automatically be construed against the insurer (id. 12-13).

Hence, after having determined that Zurich was bound by the James-Meridian-Companion settlement agreement,10 the District Court held that Zurich was a coinsurer of Meridian and ordered it to pay James $666,666 plus interest. This appeal then ensued. James also cross-appeals, arguing that the District Court erred in finding that the policy language was ambiguous.

_____

10. Although we have on several occasions upheld (as a matter of applicable state law) the validity of two-tiered settlements where they are

reasonable and entered into in good faith (see, e.g., Trustees of the Univ.

of Pa. v. Lexington Ins. Co., 815 F.2d 890 (3d Cir. 1987) and Greater N.Y. Mut. Ins. Co. v. North River Ins. Co., 85 F.3d 1088 (3d Cir. 1996)), from the very outset we have been "not unmindful of the dangers presented by two-tiered settlements" (Lexington, 815 F.2d at 902), particularly "that

two-tiered settlements are fraught with the danger of self-dealing and should be scrutinized with extra care" (id .). In this instance James' covenant not to execute the $1 million consent judgment against Meridian left the latter totally indifferent to whether the price tag attached to that judgment was really $1 million or (say) twice or three times that amount. During the pendency of this declaratory judgment action, Companion wrote Zurich that James' action could be settled in the range of $300,000, a demand that was apparently then lowered to $250,000. Even on the predicate that Companion (which indisputably was obligated to cover Meridian, and hence the James claim, under its own $1 million policy) would come up with just $125,000 in cash as its contribution, that $250,000 figure would have capped out Zurich's liability at $125,000 if it had caved in to the demand that it join in a global settlement. Instead the $1 million figure that was nominally attached to the consent judgment ("nominally" because it meant nothing to either Meridian or Companion) placed Zurich at risk for $666,666 as the price for having taken this case to trial and now to appeal. This

scenario appears to provide a classic instance of the concerns that we voiced in Lexington. But our disposition of this appeal on other grounds makes it unnecessary for us to issue a definitive ruling, rather than merely this caveat, on that score.

8

Jurisdiction and Standard of Review

Jurisdiction in the District Court was invoked on diversity-of-citizenship grounds under 28 U.S.C.S1332. Appellate jurisdiction over the District Court'sfinal judgment exists under 28 U.S.C. S1291.

We exercise plenary review as to the correct construction and legal operation of an insurance policy (see New Castle County v. Hartford Accident & Indem. Co., 970 F.2d 1267, 1270 (3d Cir. 1994); Pittston Co. Ultramar Am. Ltd. v. Allianz Ins. Co., 124 F.3d 508, 515 (3d Cir. 1997)). Finally, the District Court found (Trial Op. 10-11), and neither party disputes, that Virgin Islands contract law applies to this case. As such, we both (1) apply Virgin Islands contract law and (2) exercise de novo review over the District Court's interpretation of that law (see Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co., 89 F.3d 976, 983 (3d Cir. 1996)). In doing so we credit the District Court's factual findings.

Whom Does Zurich's Policy Cover?

As stated earlier, Zurich insists that the Named Insured provision covers only "FCCU Contractors," a term that does not encompass Meridian. Even more importantly, that reading is supported by the uncontradicted testimony of persons on both sides of the contract itself, as well as the consistent post-contracting course of dealings between Zurich and Hess Oil. But relying on the ambiguities of language and some extrinsic evidence, James asserts that Meridian is included as a named insured under the policy. Thus the situation is that both parties to the contract say that the provision means "X," while a stranger to the contract--Meridian--says it means "Y."

We agree with the District Court that the Named Insured provision is ambiguous.11 But any extended (or even brief)

---

11. As we have stated, James disputes that in its cross-appeal. But the issue turns out to be irrelevant to the outcome. As the ensuing discussion reveals, even if the provision were not ambiguous the parties to the contract were free to modify its terms, either by express amendment or by their conduct.

colloquy on how the extrinsic evidence should be weighed is entirely unnecessary, because the consistent practical construction given to that provision by the parties to the contract controls its terms. As the second of its alternative rulings, the District Court held that Meridian was covered under the policy because extrinsic evidence indicated "that the intent of the parties in negotiating the contract was to provide coverage for all contractors and subcontractors who worked on the FCCU project" (Trial Op. 13, emphasis added). So the District Court cast its searchlight of analysis solely on the presumed intention of the parties at the time of contract formation, not at all on how the contracting parties then proceeded to construe the policy in operation.12

But as Capitol Bus Co. v. Blue Bird Coach Lines, Inc., 478 F.2d 556, 560 (3d Cir. 1973) exemplifies, a basic rule of contract construction is that "[a] contract must be interpreted in light of the meaning which the parties have accorded to it as evidenced by their conduct in its performance."13 All of the ALI Restatements of the Law (thus including the Restatement (Second) of Contracts ("Restatement")) have been adopted as definitive sources of rules of decision by the Virgin Islands Legislature. 14 And Restatement S201(1) echoes the teachings of Capitol Bus:

_____

12. For example, the District Court did not credit the testimony of Hess Oil's current and former controllers because "none of these individuals had been involved in the negotiation of the policy, and most if not all of them had not even seen the policy" (Trial Op. 8). Similarly, Talarico's testimony was discredited in part because "Talarico did not even work for Hess at the time the policy was negotiated" (id.) In stark contrast, the
extrinsic evidence produced by James was given greater weight because it was generated during the policy's negotiation (id. 6-8).

13. See also such cases as Insurance Corp. of Am. v. Dillon, Hardamon & Cohen, 725 F.Supp. 1461, 1464 (N.D. Ind. 1988), adopting the view that "where, as here, the insurer and the insureds agree on the interpretation of a particular provision . . ., their agreement ends the inquiry," and Pioneer Life Ins. Co. v. Alliance Ins. Co., 374 Ill. 576, 590, 30 N.E.2d 66, 73 (1940) ("Where the terms of an agreement are in any respect ambiguous and the parties have by their own acts placed a reasonable construction upon them, their interpretation will be adopted by the court").

14. V.I. Code Ann. tit. 1, S4 (1999) states:

> Where the parties have attached the same meaning to a promise or agreement or a term thereof, it is interpreted in accordance with that meaning.

That same message is conveyed throughout the Restatement, as in Restatement S202(5)(emphasis added):

> Wherever reasonable, the manifestations of intention of the parties to a promise or agreement are interpreted as consistent with each other and with any relevant course of performance, course of dealing, or usage or trade.

Restatement S202, comm. g adds:

> The parties to an agreement know best what they meant, and their action under it is often the strongest evidence of their meaning. But such "practical construction" is not conclusive of meaning. Conduct must be weighed in the light of the terms of the agreement and their possible meanings. Where it is unreasonable to interpret the contract in accordance with the course of performance, the conduct of the parties may be evidence of an agreed modification or of a waiver by one party.

Zurich's and Hess Oil's post-contracting conduct, as manifested by their consistent administration of the Zurich policy, was eminently reasonable in practical terms, whether adopted as a sensible way to resolve the ambiguity of the Named Insured provision's opaque language (framed as it was in a way that would fail English Grammar and Syntax 101), or even if adopted as a sensible course of dealing instead of what might have been perceived as an awkward literal meaning of the provision. Either way, the contracting parties' uniform course of dealing made it clear that they viewed the policy as covering only contractors and

_____

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to
> the contrary.

11

subcontractors that Hess Oil had a contractual obligation to insure.

Indeed, as the District Court itself noted in its ruling on the parties' cross-motions for summary judgment (Summary Judgment Op. 8):

> The affidavits, depositions and other documentation submitted by Zurich show that the individuals that have administered the insurance policy [at Zurich, Amerada Hess and Hess Oil] all agree that Meridian would not be covered according to the way that the Zurich policy has been administered.

That acknowledgment should really have spelled the end of the matter. After all, the parties to a contract are free to define and clarify--or even to change--the contract's terms, and Zurich and Hess Oil did precisely that by pursuing a course of conduct consistent with their mutual understanding of the Named Insured provision.15

Most importantly for the present appeal, suppose that the District Court were right in its parsing of the original paper record as indicating that Zurich and Hess Oil had originally intended to provide coverage for all subcontractors, thus including Meridian. Even so, their later practical application of the Named Insured provision in a totally different fashion must prevail, because Meridian never had any vested rights in the terms of the policy as originally written. It is really irrelevant what the extrinsic evidence of the original contract negotiations may have shown, because Zurich and Hess Oil remained free to modify the contract's terms. Restatement S311(2) explains that in the absence of

---

15. Citing an opinion from the same District Court in Coakley Bay Condominium Ass'n v. Continental Ins. Co., 770 F.Supp. 1046, 1050 (D.V.I. 1991), the district judge said "[t]he interpretation of a contract is
dependant upon the meaning of the language used by the parties to the contract, and the Court must assume that the parties embodied their whole intentions in the contract" (Trial Op. 11). That statement ignores the dictates of the Restatement, approved and adopted as it has been by the Virgin Islands legislature. As such, the District Court's single-minded

focus on the perceived intentions of the parties as assertedly embodied in the language of the contract closed off all inquiry into the controlling

relevance of the policy's post-contractual administration.

12

an explicit provision to the contrary, "the promisor and promisee retain power to discharge or modify the duty [to

an intended beneficiary] by subsequent agreement." Here there was certainly no explicit provision in the Zurich policy to negate that retained power.

At most Meridian (and hence James as its assignee) could lay claim to benefits under the policy as an intended third-party beneficiary. And on that score, Restatement S311(3) lists three vesting events that signal when a contract may no longer be modified without the consent of an intended beneficiary:

> Such a power [the one referred to in the preceding paragraph's quotation from Restatement S311(2)] terminates when the beneficiary, before he receives notification of the discharge or modification, materially changes his position in justifiable reliance on the promise or brings suit on it or manifests assent to it at the request of the promisor or promisee.

Without question, no potential third-party rights that Meridian may assertedly have claimed under the contract ever vested under any of those alternatives.

First, the record establishes without contradiction that Meridian never materially changed its position in reliance on the Zurich policy. It will be remembered that Meridian purchased its own liability insurance from Companion-- indeed, it was not even aware of any possible coverage under the Zurich policy until after James had already filed suit against Meridian.16

Second, Meridian was confronted with Zurich's totally different (and adverse) view of the policy's coverage before James (standing in Meridian's shoes via assignment)filed the present declaratory judgment action. James' initial action against Meridian cannot of course be considered a suit on the contract under Restatement S311(3): It was a

_____

16. At best, as the District Court found (Trial Op. 4), it was only after James' suit was filed that "Meridian looked for insurance policies that might cover its liability." At worst, as discussed in n. 4, Meridian never even knew about any possible coverage under the Zurich policy until Companion had taken over the James personal injury case.

13

personal injury action, not a suit on the contract, and neither Companion nor Zurich was named as a party in that case. Finally, it is also beyond dispute that neither Zurich nor Hess Oil ever requested Meridian's assent to any promise that it would be covered under the policy (a promise that was never conveyed to Meridian at all).

In sum, it is clear that the earliest time at which Meridian could even arguably have claimed any type of "interest" was the date on which James was injured and Meridian's liability for that injury arose. Before that date Zurich and Hess Oil were free to modify the policy's terms if and to the extent that they desired. And the uncontroverted record evidence is that even if there had been any intent, as read into the original policy terms, to cover subcontractors such as Meridian, that presumed intent was supplanted by the mutual understanding-- arrived at well before James' injury--that the policy covered only "FCCU contractors." And the identical result follows if the contracting parties' course of conduct were to be viewed as a clarification of ambiguous language. As Federal Ins. Co. v. Americas Ins. Co., 691 N.Y.S.2d 508, 513 (N.Y. App. Div. 1999) has put it:

> Moreover, where, as here, the parties themselves agreed to clarify the policy
>
> . . . their agreement will be enforced even if the rights of a third party are affected, unless the third party can show that it changed its position in reliance upon the agreement as originally written.

Any way you slice it, then, the undisputed conduct of the parties controls the terms of the contract between them, thus excluding coverage for Meridian.

Zurich and Hess Oil's in-practice application of the policy likewise torpedoes the District Court's alternative ruling. Having found that the policy was ambiguous, the District Court said that extrinsic evidence need not be consulted because Virgin Islands law mandates that "the interpretation more favorable to coverage must prevail" (Trial Op. 12). On that premise, the District Court summarily ruled that the policy should be construed to include coverage for Meridian, and hence in James' favor.

14

But such generalized doctrines of contract interpretation must not be applied in a vacuum. Contra proferentem construction of an ambiguous insurance policy against an insurer may well come into play where the contract dispute is between the insurer and its insured, each contending for a different reading of the insured's coverage under a policy. But here we are called on to decide a very different question: whether a third-party entity is entitled to policy coverage where the contracting parties have agreed on a negative answer but that third party objects.

Such cases in our Circuit as Rich Maid Kitchens, Inc. v. Pennsylvania Lumbermens Mut. Ins. Co., 641 F.Supp. 297, 307-08 (E.D. Pa. 1986), aff 'd without published op. 833 F.2d 307 (3d Cir. 1987), and Hodgins v. American Mut. Liability Ins. Co., 261 F.Supp. 129, 130-31 (E.D.Pa. 1966) have properly made that very distinction, rejecting the application of contra proferentem principles in such a context. Here too there is no "doubt as to what the parties themselves intended" (the language in Hodgins , id. at 130).17 Hence the District Court was clearly mistaken in applying the doctrine to Zurich's disadvantage in the matrix of this case.

It is thus unnecessary to decide the mooted question whether Virgin Islands law will construe ambiguous policy language against the insurer when the parties to the policy have equal bargaining power. But it is worth observing that the very existence of that exception in many jurisdictions emphasizes that the doctrine itself is to be employed only in disputes between parties to an insurance policy, for it is fundamental that the purpose of judicial interpretation of a contract is to ascertain the intent of the parties. Where both parties have equal bargaining power, any judicial concerns about "take it or leave it" contracts of adhesion are lessened, and mutual agreement is more readily assumed. Here the parties to the contract have agreed on

_____

17. Indeed, James Br. 30 concedes that a policy provision is strictly construed against the insurer only when it is capable of two reasonable interpretations--again a proposition based on the differences in interpretation between an insurer and its insured. Here both parties to the policy agree on its interpretation, so the principle is inapplicable.

15

its terms, and it would subvert freedom of contract principles to benefit a third party by employing a legal doctrine--useful merely as an aid to interpretation--that yields a contrary result.

Conclusion

We apply the Named Insured provision, just as the contracting parties have in their own practical construction of that provision, in Zurich's favor regarding the exclusion of coverage for Meridian. Even if the policy as originally drafted were to be construed in Meridian's (and hence James') favor, Meridian's (and hence James') rights as a third-party beneficiary would not have vested before Zurich and Hess Oil had established a consistent course of conduct in administering the policy that excluded coverage for any subcontractor such as Meridian. Because it is

undisputed that Meridian was not a "FCCU contractor," we hold that the Zurich policy did not provide coverage for Meridian as the time of the incident that resulted in James' injuries.18 We AFFIRM as to the District Court's determination that the policy provision at issue is ambiguous (though, as stated earlier, that makes no difference in the result), and we REVERSE and order the entry of final judgment in favor of Zurich and against James.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

_____

18. Counsel for James submitted a post-argument letter, obviously stimulated by questions from our panel during oral argument, raising the objection that Zurich had not advanced the precise legal position that we have articulated here. But both before the District Court and on appeal Zurich has urged that the case should be controlled by the undisputed evidence demonstrating the uniform post-contract understanding of the parties to the policy. We see no principled jurisprudential reason for ignoring the first-year law school contracts teaching that confirms the correctness of that position.

16

 01430 01430 01430   COMPOSITION RUN COMPLETED FOR: ECMP5   PROGRAM COMPILED
ON 01/01/1900 AT 15:46:17   SUMMARY     COMPOSED     TYPESET
----------------------------------------
CHARACTERS          40501        32481  LINES        815         693 RULES
 20          20  PAGES          17         17  RUN-TIME PARAMETERS SPECIFIED:
OU=DZ,PR=P1,DI=300,DD=T,CO=0,ED=1,FI=3  ELAPSED TIME: 00:00:03:00
02/08/200011:32:05   R05.0
   DRIVER: PS     OPS: PC   *****      CONDI